UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
UNITED STATES OF AMERICA :
:
                - v. - : **OPINION**
: 07 Cr. 12 (LBS)
DANIEL DEANDRADE, :
:
              Defendant. :
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

SAND, J.:

      We deal herein with issues relating to the sentencing of Daniel Deandrade who was found guilty after a jury trial of conspiracy to distribute or possess with intent to distribute 50 grams or more of cocaine base, in a form commonly known as "crack," and of distribution or possession with intent to distribute 50 grams or more of crack.

      Defendant argues that Deandrade's prior juvenile adjudication does not qualify as a prior conviction under the sentencing guidelines to trigger a mandatory minimum sentence of 20 years. Defendant also raises a number of other arguments with respect to his potential sentence, as discussed below.

**I. Background**

      The facts in this section are drawn from the report of presentence investigation prepared in connection with Deandrade's sentencing. Deandrade was arrested on November 8, 2006, was tried by a jury and found guilty of conspiracy to distribute or possess with intent to distribute 50 grams or more of crack, and of distribution or possession with intent to distribute 50 grams or more of crack. The base level offense for

1

his criminal activity, according to the Sentencing Guidelines, is 38. The presence report also recommended a four-level increase for his role in the offense, bringing his guidelines offense level to 42.

Deandrade also had a number of incidents in his criminal history that were included in calculating his recommended guidelines sentence. With the exception of a 1990 juvenile adjudication for criminal sale of a controlled substance, none of Deandrade's prior offenses were drug-related. Thus, taking into consideration Deandrade's adult criminal convictions, the fact that he was on parole at the time of the instant offense, and that the instant offense was committed less than two years after his release from custody on a prior offense, the presence report calculated that he had 11 criminal history points, giving him a Criminal History Category of V.

Last, the presence report stated that Deandrade was subject to a 20-year mandatory minimum pursuant to 21 U.S.C. § 841(b)(1)(A), which provides that "[i]f any person commits … a [drug-related] violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 20 years and not more than life imprisonment." Because of Deandrade's drug-related juvenile adjudication, the presence report stated that the 20-year mandatory minimum applied in this case.

## II. Nonjury Juvenile Adjudications

A. Apprendi

Defendant first argues that the use of Deandrade's juvenile adjudication to subject Deandrade to a mandatory minimum sentence of 20 years violates Apprendi v. New

2

Jersey, which held that "under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." Apprendi v. New Jersey, 530 U.S. 466, 476 (U.S. 2000) (citing Jones v. United States, 526 U.S. 227, 243 n.6 (1999)). Defendant argues that the use of Deandrade's juvenile adjudication violates Apprendi because his conviction was not proven to a jury beyond a reasonable doubt. Setting aside the fact that Apprendi specifically excepts prior convictions from its holding, defendant's argument here still fails. Although the use of the adjudication triggers the 20-year mandatory minimum sentence, it does not change the statutory maximum sentence to which Deandrade is subject. "So long as the facts found by the district court do not increase the sentence beyond the statutory maximum authorized by the verdict or trigger a mandatory minimum sentence not authorized by the verdict *that simultaneously raises a corresponding maximum*, the district court does not violate a defendant's Fifth or Sixth Amendment rights by imposing a sentence based on facts not alleged in the indictment." United States v. Sheikh, 433 F.3d 905, 906 (2d Cir. 2006). Since the statutory maximum is the same regardless of Deandrade's prior adjudication, Apprendi is not implicated here. See United States v. Snow, 462 F.3d 55, 64-65 (2d Cir. N.Y. 2006) ("the district court's finding that Snow had previously been convicted of a felony drug offense, despite subjecting him to an increased statutory minimum, was irrelevant to the statutory maximum of life imprisonment, since that maximum remains constant regardless of whether or not the government proved that he had been previously

convicted of a felony drug offense.").

B. Circuit Split: The Tighe Decision

1. Tighe

Second, defendant argues that a nonjury adjudication cannot be considered a "prior conviction" under § 841(b)(1)(A). No case has dealt specifically with that issue, however, there is a relevant circuit split on whether a nonjury juvenile adjudication can qualify as a "prior conviction" to fall under Apprendi's exception and increase a defendant's statutory maximum sentence under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). The rationales of the courts to consider this issue are strongly relevant to our inquiry, and thus a brief survey of the relevant cases follows.

Defendant mainly relies on a Ninth Circuit case taking the minority view on this topic, United States v. Tighe, 266 F.3d 1187 (9th Cir. 2001). In Tighe, the Ninth Circuit confronted a situation where the district court had used a juvenile adjudication to enhance the defendant's mandatory minimum sentence under ACCA. The Ninth Circuit noted that "as a juvenile at the time of the adjudication, Tighe was not afforded the right to a jury trial during the juvenile proceedings under either state or federal law." Id. at 1191. Further, "the fact of Tighe's prior juvenile adjudication was used to increase his statutorily mandated maximum punishment from not more than 10 years… to at least 15 years." Id.[1] The Court held that "the 'prior conviction' exception to Apprendi's general rule must be limited to prior convictions that were themselves obtained through

---

[1] The Court specifically noted that "[a] fact that is used to increase the maximum statutory penalty to which a defendant is exposed raises an entirely different set of constitutional concerns than a fact that merely affects where a sentence is fixed within an undisputed statutorily mandated range." Id. As discussed above, those constitutional concerns are not present here, where only a mandatory minimum is triggered, making Tighe's rationale even less persuasive.

4

proceedings that included the right to a jury trial and proof beyond a reasonable doubt. Juvenile adjudications that do not afford the right to a jury trial and a beyond-a-reasonable-doubt burden of proof, therefore, do not fall within Apprendi's 'prior conviction' exception." Id. at 1194.

In a more recent decision, after the Ninth Circuit acknowledged that "California courts disagree with Tighe," and that other Circuits have similarly disagreed,[2] the Court held that it would not grant habeas corpus due to a state court's use of a non-jury juvenile adjudication as a predicate felony to enhance a defendant's sentence. The Court wrote:

> Although we are not suggesting that Tighe was incorrectly decided, as some of these varying interpretations of Apprendi suggest, the opinion does not represent clearly established federal law 'as determined by the Supreme Court of the United States.' 28 U.S.C. § 2254(d)(1). In general, Ninth Circuit precedent remains persuasive authority in determining what is clearly established federal law. But, in the face of authority that is directly contrary to Tighe, and in the absence of explicit direction from the Supreme Court, we cannot hold that the California courts' use of Petitioner's juvenile adjudication as a sentencing enhancement was contrary to, or involved an unreasonable application of, Supreme Court precedent.

Boyd v. Newland, 467 F.3d 1139, 1152 (9th Cir. 2006) (citations omitted). Thus, although the Ninth Circuit affirmed its decision in Tighe, it has also recognized that the weight of the authority in other jurisdictions is against Tighe's holding.

C. Other Circuits

---

[2] The Boyd Court noted that "the Third, Eighth, and Eleventh Circuits have held that the Apprendi 'prior conviction' exception includes nonjury juvenile adjudications, which can be used to enhance a defendant's sentence." Boyd v. Newland, 467 F.3d 1139, 1152 (9th Cir. Cal. 2006)

Every other Circuit to consider the issue has disagreed with Tighe and held that a juvenile adjudication may be used as a predicate felony to enhance a defendant's mandatory sentence.

In United States v. Smalley, the Eighth Circuit disagreed with the Tighe decision because "juvenile defendants have the right to notice, the right to counsel, the right to confront and cross-examine witnesses, and the privilege against self-incrimination," and that a "judge in a juvenile proceeding, moreover, must find guilt beyond a reasonable doubt before he or she can convict." Id. at 1032-33. The Court concluded that "these safeguards are more than sufficient to ensure the reliability that Apprendi requires." Id. Further, the Court stated that a nonjury juvenile trial does not "undermine[] the reliability of such adjudications in any significant way because the Supreme Court has held that the use of a jury in the juvenile context would 'not strengthen greatly, if at all, the factfinding function' and is not constitutionally required." Id. (citing McKeiver, 403 U.S. 528, 533 (1971)).

Soon after Smalley, the Third Circuit recognized that a "unanimous" panel on the Eighth Circuit had "flatly rejected" the Tighe holding. United States v. Jones, 332 F.3d 688 (3d Cir. 2003). The Court agreed that "[a] prior nonjury juvenile adjudication that was afforded all constitutionally-required procedural safeguards can properly be characterized as a prior conviction for Apprendi purposes." Id. Similarly, the Eleventh Circuit joined the majority view in United States v. Burge, 407 F.3d 1183, 1190-91 (11th Cir.). The Court reiterated the Supreme Court's holding that "[t]rial by jury in the juvenile court's adjudicative stage is not a constitutional requirement," see McKeiver, 403 U.S. at 533, and noted that in the Supreme Court's Jones and Apprendi decisions, the

Court did not address juvenile adjudications and did not "explicitly state[] that a juvenile adjudication can only count as a prior conviction under the ACCA if the juvenile was afforded the right to a jury trial." Id. Accordingly, the Court followed the Third and Eighth Circuit's rationales and held that "[a] prior nonjury juvenile adjudication that was afforded all constitutionally-required procedural safeguards can properly be characterized as a prior conviction for Apprendi purposes." Id.

The Fourth and Sixth Circuit have also followed this line of cases. See United States v. Dais, 178 Fed. Appx. 253, 256 (4th Cir. 2006) (holding that the defendant's "contention that [his prior] burglary offense conviction may not properly be used as a predicate offense for ACCA enhancement merely because he was a juvenile at the time of the offense" was "without merit"); United States v. Crowell, 493 F.3d 744, 750 (6th Cir. 2007) ("We now explicitly hold that the use of procedurally sound juvenile adjudications as ACCA predicates does not violate due process… Congress has the power 'to treat prior convictions as sentencing factors subject to a lesser standard of proof because the defendant received all process that was due when convicted – for adults that includes the right to a jury trial; for juveniles, it does not.'") (citing Jones, 332 F.3d at 695).[3]

The Court of Appeals for the Second Circuit has not yet ruled on this issue, nor has any district court in this circuit.[4]

---

[3] A number of other cases have cited this rationale favorably, but ultimately refrained from joining the rationale because their state offered juveniles jury trials. See United States v. Matthews, 498 F.3d 25 (1st Cir. 2007) (noting that "we see no distinction between juvenile adjudications and adult convictions; both reflect the sort of proven prior conduct that courts historically have used in sentencing. If their reliability is also equivalent, the prior conviction exception presumably would apply to juvenile adjudications with equal force."); United States v. Wilburn, 473 F.3d 742, 746 (7th Cir. 2007) ("At the time, Wisconsin law afforded Wilburn a right to a jury trial in the juvenile proceeding, and thus his conviction could be used even under the Ninth Circuit's rule.").

[4] The only cases to discuss this conflict in our jurisdiction are Hammie v. United States, 2005 U.S. Dist. LEXIS 35889 (D. Conn. Dec. 20, 2005) ("Whether a non-jury juvenile adjudication falls within the 'prior conviction' exception is an issue the Second Circuit has yet to consider. The Third, Eighth and Eleventh

D. Application to Juvenile Drug Offenses

Nearly all of the courts to consider whether nonjury juvenile offenses can be considered "prior convictions" have done so in the context of the ACCA statute and Apprendi. Only one case has discussed juvenile drug offenses under 21 U.S.C. § 841(b)(1)(A), an Eleventh Circuit case dealing with a youthful offender adjudication under New York law.

In United States v. Acosta, the Court was called upon to decide "whether a felony adjudication under New York's youthful offender statute qualifies as a 'conviction' within the meaning of 21 U.S.C. § 841(b)(1)(A)." 287 F.3d 1034, 1036 (11th Cir. 2002). The Court first noted that "section 841 does not provide a specific definition of the word 'conviction,'" and "[n]o reported decision has been found addressing whether any state's youthful offender adjudication qualifies as a prior conviction." Id. Accordingly, the Court held that "this decision is controlled by analogous cases in which this Court has held that a plea of *nolo contendere* in Florida state court with adjudication withheld is a conviction that supports a section 841 sentence enhancement." Id. at 1036-1037 (citing United States v. Fernandez, 58 F.3d 593 (11th Cir. 1995)). In that prior case, the defendant had previously pled *nolo contendere* to a state drug offense but "was never 'convicted' of the state offense." Id. The Court had concluded that the plea of *nolo contendere* constituted a 'conviction' to enhance the defendant's sentence, even though the state court never adjudicated him guilty.

---

Circuits have held that such adjudications do fall within the exception. The Ninth Circuit has held that they do not.") (citations omitted) and United States v. Santiago, 76 Fed. Appx. 397, 399 (2d Cir. 2003) ("Defendant does not claim, and the record does not indicate, that any of his three predicate convictions were adjudicated in non-jury juvenile proceedings. Accordingly, we have no occasion to consider the question addressed in United States v. Tighe.").

8

Accordingly, in Acosta, the Court reasoned that "[i]f a defendant who is not even adjudicated guilty is considered to have suffered a conviction within the meaning of section 841, then a youthful offender who pleads guilty and is adjudicated must also be considered to have suffered a prior conviction, even if the state law does not consider him 'convicted' and his record is sealed." Id. at 1137. Most persuasively, the Court noted that this result "comports with the rationale behind youthful offender and juvenile deferral statutes because those programs are 'meant to provide a second chance, not a technical legal advantage if, not having learned a lesson, they continue their criminal conduct.'" Id. (citing United States v. Campbell, 980 F.2d 245, 251 (4th Cir. 1992). Furthermore, the Court reasoned that "the purpose of section 841(b)(1)(B), 'to punish and deter recidivism,' would be frustrated if recidivist offenders were excused from enhanced sentencing merely because their prior offenses are not deemed 'convictions' under state law." Id.

A similar rationale was employed by the D.C. Circuit in another sentencing case to consider a juvenile adjudication, although not specifically relating to § 841(b)(1)(A). The Court wrote, "[j]uvenile justice systems, in theory, focus on treatment and rehabilitation. Juvenile crime is termed 'delinquency' and those responsible for it are 'youth offenders.' … Setting aside a conviction may allow a youth who has slipped to regain his footing by relieving him of the social and economic disabilities associated with a criminal record …. But if a juvenile offender turns into a recidivist, the case for conferring the benefit dissipates … Society's stronger interest is in punishing appropriately an unrepentant criminal." United States v. Johnson, 307 U.S. App. D.C. 284 (D.C. Cir. 1994).

9

Moreover, the Second Circuit has cited this line of cases favorably. See United States v. Sampson, 385 F.3d 183, 195 (2d Cir. N.Y. 2004) ("the district court properly determined that Sampson's New York youthful offender adjudication qualifies as a prior final conviction … Reaching the same conclusion, the Eleventh Circuit reasoned that a youthful offender statute is 'meant to provide a second chance, not a technical legal advantage if, not having learned a lesson, individuals continue their criminal conduct.'") (citing Acosta, 287 F.3d at 1037).

The rationale employed by these Courts is equally persuasive when considering enhanced sentences under Section 841(b)(1)(A), and it seems clear that Deandrade's juvenile adjudication should be considered a 'prior conviction' under the statute.

### III. Burden of Proof

Defendant has also argued that the standard that the judge used in Deandrade's juvenile adjudication was a preponderance of the evidence standard, and not the reasonable doubt standard. However, it is not clear from the record that there is any basis for this argument. The Supreme Court has held clearly that the 'beyond a reasonable doubt' standard is the proper standard in juvenile delinquency proceedings. In re Winship, 397 U.S. 358, 362 (1970). In Winship, the Court made absolutely clear that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged" and that "[t]he same considerations that demand extreme caution in factfinding to protect the innocent adult apply as well to the innocent child." Id. Thus, "the constitutional safeguard of proof beyond a reasonable doubt is as much required

during the adjudicatory stage of a [juvenile] delinquency proceeding as are [the other] constitutional safeguards applied in [prior cases] -- notice of charges, right to counsel, the rights of confrontation and examination, and the privilege against self-incrimination." Id. at 368.

Despite defendant's contention that the reasonable doubt standard was not used, there is no proof on the record that Mr. Deandrade's juvenile proceeding was governed by the preponderance standard. The pre-sentence report states that the juvenile adjudication occurred in 1990, twenty years after the Winship decision, and that "details concerning this offense were not available." Once it has been demonstrated that the prior adjudication exists, "a presumption of regularity attaches, and the burden shifts to the defendant to produce evidence that his rights were infringed or some procedural irregularity occurred in the earlier proceeding." Parke v. Raley, 506 U.S. 20, 24 (1992). The defendant has offered no evidence that the judge in the adjudication used a preponderance of the evidence standard, which Supreme Court case law would prohibit. Without further evidence, it must be presumed that the reasonable doubt standard was used.

## IV. **Defendant's Other Challenges**

Next, defendant argues that the amount of cocaine base sold by the defendant was "arbitrarily determined" because it was based on the testimony of Deandrade's coconspirators and not physically produced at trial. This argument is clearly meritless – the government is permitted to establish the quantity of drugs at issue based on testimony from the witnesses at trial. United States v. Perrone, 936 F.2d 1403, 1418 (2d Cir. N.Y.

1991) ("The recent 'war on drugs' has produced a spate of prosecutions for narcotics offenses where no actual drugs have been seized. In such cases, the court must attempt, on the base of the available evidence, to estimate what quantity of drugs was involved … it is possible to reach a reliable estimate on the basis of evidence such as testimony as to conversations between the defendant and drug customers or between defendants and government agents.") (citations omitted). Here, some of the drugs were produced at trial, and the government introduced testimony discussing a larger quantity.

Defendant also argues that the four-point leadership enhancement recommended by the presentence report is inappropriate. Again, defendant's argument fails because the testimony introduced at trial established that "defendant was an organizer or leader of a criminal activity that involved five or more participants." See U.S.S.G. § 3B1.1.

Finally, defendant argues that the criminal points for his 1995 conviction for assault with intent to cause serious injury should not be included in his total criminal points because his right to a speedy trial was violated. Nothing on the record suggests that this conviction was improper, or reveals any prior challenge to that conviction by defendant. Thus, it remains a prior conviction for the purpose of calculating his sentence.[5]

**V. Conclusion**

Thus, defendant's argument that his juvenile adjudication should not be considered a prior conviction must fail. Further, although defendant has argued that the 'reasonable doubt' standard may not have been used, nothing in the pre-sentence report

---

[5] Defendant also argues that a sentence reduction is appropriate because of the disparity created by the crack/powder ratio in this case. A two point reduction to the base offense level for crack offenses was already taken into account in the guidelines range recommended by the presentence report.

12

supports this claim, and it would have been a serious error on behalf of the juvenile court to have used a preponderance standard. Defendant's other arguments are similarly without merit.

The Court will proceed to sentencing.

SO ORDERED.

Dated: September 25, 2008
New York, NY

_____
U.S.D.J.