**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

November 15, 2019

**BY ECF**

The Honorable Loretta A. Preska
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re: *United States v. Daniel Deandrade*, 07 Cr. 12 (LAP)

Dear Judge Preska:

      The Government respectfully submits this letter in response to the motion by defendant Daniel Deandrade for a reduction of sentence pursuant to Section 404 of the First Step Act of 2018, which makes retroactive the provisions of the Fair Sentencing Act of 2010 that lower the mandatory minimum sentences applicable to offenses involving cocaine base (crack cocaine or "crack").

      Although the Government has not yet retrieved the entire file in this matter, the docket sheet, the original June 18, 2008 Presentence Investigation Report ("PSR"), the October 3, 2019 Supplemental Presentence Report ("2019 Supp. PSR"), the January 30, 2012 Supplement to the PSR ("2012 Supp. PSR"), and the August 13, 2008 and September 25, 2008 sentencing transcripts ("8/13/08 Sent. Tr." and "9/25/08 Sent. Tr.," respectively) provide sufficient information to address the particular circumstances of Deandrade's eligibility for a sentence reduction.

      As discussed below, Deandrade's violation of the federal narcotics laws involved between 78 and 312 kilograms of crack, a quantity that far exceeds the Fair Sentencing Act's higher thresholds for sentencing under 21 U.S.C. § 841(b)(1)(A).  Thus, the statutory mandatory minimum and maximum sentences applicable to Deandrade remain the same, and he is ineligible for resentencing under the First Step Act.  But the Court need not even reach this threshold eligibility issue because, as explained in Part II, *infra*, even if Deandrade is eligible for a sentence reduction, the Court should exercise its discretion and decline to do so.

      Finally, Deandrade appears to argue that he is eligible for resentencing due to the retroactive applications of Amendments 750 and 782 to the Sentencing Guidelines, but Deandrade is legally ineligible for resentencing under these provisions.

      Accordingly, the Government opposes resentencing for Deandrade.

## I.     Deandrade is Ineligible for a Sentence Reduction under the First Step Act

### A.  Applicable Law

Section 404 of the First Step Act makes retroactive the portions of the Fair Sentencing Act that lowered statutory penalties for certain offenses involving cocaine base.   The Fair Sentencing Act was enacted on August 3, 2010, and did not apply retroactively. *See Dorsey v. United States*, 567 U.S. 260 (2012) (holding that the Act applied to any defendant sentenced on or after August 3, 2010, regardless of when the offense occurred). The First Step Act applies to "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 . . . , that was committed before August 3, 2010," and provides that the Court may "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed." Section 404(c) states:

> No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits.  Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.

Prior to the Fair Sentencing Act, under 21 U.S.C. § 841(b)(1)(A), an offense involving 50 grams or more of cocaine base required a mandatory minimum term of imprisonment of 10 years, and allowed a maximum term of life imprisonment. The mandatory sentence was doubled to 20 years if the defendant had a prior conviction for a felony drug offense, and to life imprisonment if the defendant had two such prior convictions. Section 2 of the Fair Sentencing Act changed the threshold quantity to 280 grams for application of these sentencing provisions. In addition, prior to the Fair Sentencing Act, under 21 U.S.C. § 841(b)(1)(B), an offense involving 5 grams or more of cocaine base required a mandatory minimum term of imprisonment of 5 years, and allowed a maximum term of imprisonment of 40 years.  The mandatory sentence was doubled to 10 years if the defendant had a prior conviction for a felony drug offense.  Section 2 of the Fair Sentencing Act changed the threshold quantity to 28 grams for application of these sentencing provisions.

Under the First Step Act, a defendant who was sentenced before August 3, 2010, and whose sentencing exposure would be different under Section 2 of the Fair Sentencing Act, is entitled to consideration for a reduced sentence.  Section 404(b) of the First Step Act provides that a court may "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed." This provision does not authorize a complete resentencing. *Cf. Dillon v. United States*, 560 U.S. 817, 825-26, 831 (2010) (analyzing analogous sentence reduction provision, 18 U.S.C. § 3582(c)(2)).  Instead, as with sentence reductions under 18 U.S.C. § 3582(c)(2), the Court should first determine whether the defendant is eligible for consideration under the First Step Act (that is, whether he or she was sentenced based on a statutory minimum that was lowered by the Fair Sentencing Act).  If he or she is so eligible, the Court should calculate the current range under the United States Sentencing

Guidelines ("Guidelines"), and assess whether, in its discretion, a sentencing reduction is warranted.

### B. Deandrade's Offense Conduct

Deandrade was involved in the operation of two crack distribution organizations, one of which distributed crack in Utica, New York (the "Utica Narcotics Operation"), and the other of which distributed crack near Stratford Avenue in the Bronx (the "Stratford Avenue Narcotics Operation") (PSR ¶ 6.)

#### 1. Utica Crack Distribution

From between 2001 through 2003, Deandrade "was one of the princip[al] suppliers of" crack for the Utica Narcotics Operation. (*Id.* ¶ 9.)  Deandrade received cocaine and manufactured, or "cooked," crack to be sold in Utica from two different locations in the Bronx. (*Id.* ¶¶ 8, 10.)  In total, Deandrade supplied approximately 10 to 20 kilograms of crack to the Utica Narcotics Operation, which sold approximately 500 to 1000 grams of crack per week. (*Id.* ¶¶ 10-11.)

#### 2. Stratford Avenue Crack Distribution

From between 1999 through 2005, Deandrade "ran the crack business" on Stratford Avenue, facilitating the distribution of crack at a rate of approximately 250 grams to one kilogram per week. (*Id.* ¶ 12.)  In total, Deandrade sold between 78 and 312 kilograms of crack on Stratford Avenue between 1999 and 2005. (*Id.*)

### C. Relevant Procedural History

#### 1. Trial

Deandrade's trial began on April 14, 2018.  At the conclusion of the trial, the jury found Deandrade guilty on both counts in the indictment: (a) one count of conspiracy to distribute and possess with intent to distribute 50 grams or more of cocaine in crack form, in violation of 21 U.S.C. §§ 812, 841(a)(1) and 841(b)(1)(A); and (b) one count of distribution and possession with intent to distribute cocaine in crack form, in violation of 21 U.S.C. §§ 812, 841(a)(1) and 841(b)(1)(A).

#### 2. Sentencing and Appeal

Deandrade's sentencing hearing occurred on August 13 and September 25, 2008, before the Honorable Leonard B. Sand.  The Court adjourned sentencing from August 13 to September 25, 2008, so it could consider briefing on (1) whether the Government's filing of the prior felony information based on Deandrade's juvenile conviction was appropriate, (2) whether the amount of crack that should be attributable to the defendant in the PSR (78 to 312 kilograms) was accurate for Guidelines purposes, and (3) whether the organizer or leader sentencing enhancement should apply. (*See* 8/13/08 Sent. Tr. at 20-21; 9/24/08 Sent. Tr. at 3.)  At the September 25, 2008 hearing, the Court found for the Government on all three issues, and

subsequently issued a written opinion.  *See United States v. Deandrade,* 633 F. Supp. 2d 1 (S.D.N.Y. 2008).  Whether the juvenile conviction was appropriately considered was important because if it did, it would trigger a 20-year mandatory minimum under 21 U.S.C. § 841(b)(1)(A).  *See id.*  While the Court ultimately found that the 20-year mandatory minimum applied, it later discounted the importance of that minimum, noting that its opinion on the subject was "dictum" because the sentence he intended to impose was higher than 20 years "without regard to the mandatory minimum."  (9/25/08 Sent. Tr. at 4-5.)

At the September 25, 2008 proceeding, the Court adopted the Guidelines calculation contained in the PSR with respect to the amount of crack attributed to the defendant.  (*See* 9/24/08 Sent. Tr. at 18 ("I think the guidelines computation as contained in the presentence report is accurate in all respects.")  Accordingly, the Court agreed with Probation that because the offense involved between 78 and 312 kilograms of crack, the base offense level was 38.  (PSR. ¶ 19.)  Three levels were added because Deandrade was a leader of the drug operation.  (*Id.* ¶  22.)  The total offense level, therefore, was 42.  (*Id.* ¶ 26.)  The defendant's Criminal History Category was V, making the applicable guidelines range 360 months to life.  (*Id.* ¶¶ 43, 64.)

After considering all of the factors set forth in 18 U.S.C. § 3553(a), and listening to arguments from counsel, the Court varied from the advisory Guidelines range of 360 months to life and imposed a sentence of 300 months on Counts One and Two, to run concurrently.  (*See* 9/25/08 Sent. Tr. at 19.)  In addition, Deandrade was sentenced to 10 years' supervised release.  (*Id.*)  The Court waived the fine, but imposed the mandatory $200 special assessment.  (*Id.* at 37.)

Deandrade's conviction and sentence were thereafter affirmed by the Second Circuit, which specifically indicated that the 300-month sentence imposed was "unaffected by" whether the juvenile sentence would trigger a 20-year mandatory minimum.  *See United States v. Deandrade*, 600 F.3d 115, 120 (2d Cir. 2010).

At this point, Deandrade, who has been in custody on this case since November 2006 (*see* PSR at page 1), has served approximately 156 months.

### 3.  The Court's Prior Consideration of a Sentence Reduction

On August 19, 2015, Deandrade, proceeding *pro se*, requested appointment of counsel to assist him in pursuing a motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2).  (Dkt. No. 88.)  Given that Deandrade was ineligible for a reduction because the sentence imposed by Judge Sand was below the minimum term provided by the amended guidelines range (*see* 2012 Supp. PSR), this Court disposed of that request with an order denying the sentence reduction.  (Dkt. No. 89.)  On May 2, 2016, Deandrade again moved for a sentence reduction (Dkt. No. 94), which the Court again denied (Dkt. No. 95.).

### D.  Deandrade is Legally Ineligible for a Sentence Reduction

Deandrade is ineligible for a sentence reduction because his violation of the federal narcotics laws involved between 78 and 312 kilograms of crack, a quantity range that far exceeds the Fair Sentencing Act's higher thresholds for sentencing under 21 U.S.C. § 841(b)(1)(A).  (*See* PSR ¶¶ 12, 19) As such, the statutory mandatory minimum and maximum sentences applicable to Deandrade remain the same, *making Deandrade ineligible for resentencing under the First Step Act.*

The Government is aware that most of the courts to have considered this issue, have ruled, contrary to the Government's position, that the First Step Act refers to the quantity of narcotics charged in the indictment upon which a defendant was convicted, not the amount attributed to the defendant by judicial finding.  *See, e.g.*, *United States v. Rose*, 379 F. Supp. 3d 223, 230 (S.D.N.Y. 2019) (holding that "the Government's interpretation of § 404(a) is contrary to the clear weight of persuasive authority") (collecting cases).[1]  The Government respectfully disagrees with these district court-level opinions, which have taken a view contrary to the Government's position.[2]

In the Government's view, these opinions largely make the same interpretive error.  The First Step Act applies only to a "covered offense," which Section 404(a) defines as "a *violation* of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act . . . that was committed before August 3, 2010."  (Emphasis added.).  The statute thus keys eligibility not on the defendant's statute of conviction, but on the specific "violation" that the defendant "committed." *See United States v. Blocker,* No. 4:07CR36-RH,

---

[1] *See United States v. Martinez*, 04-CR-48 (JSR), 2019 WL 2433660 (S.D.N.Y. June 11, 2019) (reasoning that "violation of a Federal criminal statute" refers to the drug quantity charged in the indictment, and determining First Step Act eligibility on the basis of that quantity); *see also, e.g.*, *United States v. Allen*, 2019 WL 1877072, at *3 (D. Conn. Apr. 26, 2019); *United States v. Dodd*, 2019 WL 1529516, at *2-3 (S.D. Iowa Apr. 9, 2019); *United States v. Simons*, 2019 WL 1760840, *6 (E.D.N.Y. Apr. 22, 2019); *United States v. Martin*, 2019 WL 1558817, *3 (E.D.N.Y. Apr. 10, 2019); *United States v. Davis*, 2019 WL 1054554, at *2 (W.D.N.Y. Mar. 6, 2019); *United States v. Pugh*, 2019 WL 1331684, at *3 (N.D. Ohio Mar. 25, 2019); *United States v. Pierre*, 2019 WL 1495123, at *5 (D.R.I. Apr. 5, 2019); *United States v. Stanback*, 2019 WL 1976445, at *3 (W.D. Va. May 2, 2019); *United States v. Laguerre*, 2019 WL 861417, at *3 (W.D. Va. Feb. 22, 2019); *United States v. Glore*, 2019 WL 1060838, at *6 (E.D. Wis. Mar. 6, 2019).

[2] The following cases have ruled in favor of the Government:  *United States v. Blocker*, 378 F. Supp. 3d 1125, 1129–32 (N.D. Fla. 2019) (reasoning that eligibility for a sentence reduction under the First Step Act depends on the criminal conduct constituting the *violation* of the criminal statute); *United States v. Banuelos*, 2019 WL 2191788, at *2–3 (D. New Mex. May 21, 2019) (determining a defendant's eligibility for First Step Act relief based on the drug quantity for which the defendant was responsible, not the quantity charged in the indictment); *United States v. Haynes*, 2019 WL 1430125, at *2 (D. Neb. Mar. 29, 2019); *United States v. Potts*, 2019 WL 1059837, at *2 (S.D. Fla. Mar. 6, 2019); *United States v. Willis*, 2019 WL 4849435, at *9 (E.D. Pa. Sept. 30, 2019).

2019 WL 2051957, at *3 (N.D. Fla., Apr. 25, 2019) ("The word 'which' in this definition of 'covered offense' modifies 'violation of a Federal criminal statute.'  The 'violation' of the criminal statute is the criminal conduct; the violation is not the indictment.").  Thus, in the Government's view, whether the defendant has committed a "covered offense" turns on whether the statutory penalties for the defendant's *violation* of the narcotics laws were modified, not whether the penalties for the quantity minimum charged in the indictment were modified.  As noted above, Deandrade's "violation" involved between 78 and 312 kilograms of crack, exceeding the new minimum drug quantity threshold of 280 grams found in 21 U.S.C. § 841(b)(1)(A) by a considerable margin.

Moreover, finding Deandrade eligible by relying solely on the indictment would create an unfair disparity with later charged defendants who committed indistinguishable violations of the narcotics laws.  The Government charged a conspiracy to distribute at least 50 grams of crack in the indictment in this case only because that was the pertinent statutory minimum quantity threshold at the time.  Deandrade's actual conduct demonstrates complicity in a conspiracy to distribute between 78 and 312 kilograms of crack.  Applying only the 50-gram quantity now would create a gross disparity with similarly situated offenders charged after the Fair Sentencing Act was adopted in 2010, defeating Congressional intent in the First Step Act of assuring like treatment of like offenders and reducing the penalty applied to those punished disproportionately relative to their actual conduct.  As the court explained in *Blocker,* adopting the "indictment-only" theory "would not eliminate disparity but instead would introduce enormous disparity in the opposite direction, giving earlier crack defendants a lower penalty range not available to later crack defendants."  *Blocker*, 2019 WL 2051957, at *5.

Accordingly, the Government respectfully submits that Deandrade is ineligible for relief under the First Step Act.

## II.    In Any Event, Deandrade Should Not Receive a Sentence Reduction under the First Step Act

Even if the Court disagrees with the Government's legal analysis and determines that Deandrade is legally eligible for a sentence reduction, the Court should exercise its discretion to decline to do so.  Even where a defendant is eligible for a reduced sentence, the Court is not required to grant relief.  Section 404(c) of the First Step Act provides that "[n]othing in this section shall be construed to require a court to reduce any sentence pursuant to this section."  Indeed, the Court need not definitively rule on Deandrade's legal eligibility because relief is unwarranted here.  *See, e.g.*, *United States v. Williams*, No. 00 CR. 1008 (NRB), 2019 WL 5791747, at *4 (S.D.N.Y. Oct. 17, 2019) ("The Second Circuit has yet to weigh in on the dueling interpretations of the First Step Act, and we need not resolve the issue here because even if Williams were eligible for a sentence reduction under the First Step Act, it would not be warranted in this case.").

Deandrade's Guidelines range remains 360 months to life—exactly the same range that applied when Judge Sand imposed the 300-month sentence in 2008.  (*See* 2019 Supp. PSR at 2.) That Deandrade's new mandatory minimum sentence would be 10 years rather than 20 years is immaterial, as Judge Sand specifically noted at sentencing that he was imposing the 300-month

sentence regardless of whether the applicable mandatory minimum was 20 years or 10 years. *See* 9/25/08 Sent. Tr. at 4-5 (noting sentencing imposed "without regard to the mandatory minimum"); *see also Deandrade*, 600 F.3d at 120 (observing that Deandrade's sentence was "unaffected by" whether the mandatory minimum was 20 years or 10 years.)

Deandrade's high Guidelines range reflects the seriousness of Deandrade's criminal conduct. He was a significant participant in two different serious crack distribution conspiracies. He both "cooked" crack and facilitated its distribution in both Stratford Avenue in the Bronx and in Utica. To date, Deandrade has yet to accept responsibility or show any remorse for his conduct.

Granting Deandrade relief would also be contrary to the purposes of the Fair Sentencing Act, which was to reduce the discrepancy between the Guidelines ranges for crack and powdered cocaine. *See Dorsey v. United States*, 567 U.S. 260, 269 (2012). As noted above, granting Deandrade relief here would itself introduce another unfair discrepancy: between those defendants convicted before the Fair Sentencing Act was enacted and those convicted afterwards. Deandrade should not benefit from the fact that the charging document specified the highest statutory threshold quantity in effect at the time, and that standard practices prior to *Alleyne v. United States*, 570 U.S. 99 (2013), did not seek to have the jury make findings as to the total drug quantity. Had the Fair Sentencing Act and *Alleyne* been in effect at the time Deandrade was charged, undoubtedly the Government would have charged him with a conspiracy to distribute 280 grams of crack or more, and the jury would have found him responsible for well in excess of that quantity, as the trial evidence in this case overwhelmingly established Deandrade's responsibility for between 78 and 312 kilograms of crack. (*See, e.g.* 9/25/08 Sent. Tr. at 18 (the Court finding that "the evidence of guilt was overwhelming" and "the guidelines computation as contained in the presentence report [including as to drug quantity] is accurate in all respect").)

Permitting Deandrade to be resentenced due to the happenstance of the timing of his case, and where the actual crack quantity involved does not support modified statutory penalties, would be contrary to the need for a sentence to "reflect the seriousness of the offense," "promote respect for the law," "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," and "provide just punishment for the offense" under 18 U.S.C. § 3553(a)(2)(A).

Accordingly, while the Court need not determine Deandrade's legal eligibility for resentencing under the First Step Act, the Court should nevertheless exercise its discretion to deny Deandrade's motion.[3]

---

[3] The Government has also reviewed Deandrade's disciplinary record via the Bureau of Prison's SENTRY system. That record indicates that Deandrade had one violent incident involving an assault on an officer without serious injury in 2012, but has not had any other serious incidents before then or since. (*See* Ex. A (Deandrade's Disciplinary Record)). The Government does not believe Deandrade's disciplinary history should have significant bearing on this matter.

### III. Deandrade is Ineligible for Release under Amendments 750 and 782 to the Sentencing Guidelines

Deandrade also appears to argues that he is eligible for a sentence reduction under 18 U.S.C. § 3582, based on the retroactive application of Amendments 750 and 782 to the Sentencing Guidelines.  (*See* Def. Br. 15-17.)  As noted above, the Court has already concluded on two occasions that Deandrade is not eligible for a sentence reduction under 18 U.S.C. § 3582(c)(2).  Deandrade remains ineligible.

Under 18 U.S.C. § 3582(c)(2), the Court, "after considering the factors set forth in section 3553(a)," may reduce a term of imprisonment if it was "based on a sentencing range that has subsequently been lowered by the Sentencing Commission."  The statute "establishes a two-step inquiry."  *Dillon v. United States*, 560 U.S. at 826.  "At step one, § 3582(c)(2) requires the court to follow the Commission's instructions in [U.S.S.G.] § 1B1.10 to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized," *id.* at 827, and § 1B1.10 in turn requires the court to "determine the amended guidelines range that would have been applicable to the defendant if the amendment(s) to the guidelines listed in subsection (d) had been in effect at the time the defendant was sentenced" holding all else constant, U.S.S.G. § 1B1.10(b)(1).  *See Williams*, 2019 WL 5791747, at *2.

"At step two of the inquiry, § 3582(c)(2) instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction ... is warranted in whole or in part under the particular circumstances of the case."  *Dillon*, 560 U.S. at 827.  However, the Court should reach step two "[i]f, and only if, a defendant is eligible for a reduction in sentence under 18 U.S.C. § 3582(c)(2) and U.S.S.G. § 1B1.10."  *United States v. Mock*, 612 F.3d 133, 134 (2d Cir. 2010).

Deandrade's application fails at the first step of the *Dillon* inquiry.  Amendment 782, in relevant part, increased the amount of crack required to trigger a base offense level of 38 from 1.5 kilograms to 25.2 kilograms.  *See* U.S.S.G. Supp. to App. C at 64-74.  The Court's finding at sentencing that Deandrade's offense involved between 78 and 312 kilograms of crack exceeds this threshold.

Similarly, "[a] sentence reduction under Amendment 750 is authorized only if it would have the effect of lowering a defendant's applicable guideline range."  *United States v. Royal*, No. 08 CR 698 DC, 2012 WL 527429, at *2 (S.D.N.Y. Feb. 17, 2012) (citing 18 U.S.C. § 3582(c)(2)).  Amendment 750 established a base offense level of 38 for an offense involving 8.4 kilograms of crack or more.  *See* U.S.S.G. § 2D1.1(c)(1); *Eubanks v. United States*, No. 92 CR. 0392 (LAP), 2017 WL 2303671, at *2 (S.D.N.Y. May 9, 2017).  Again, Deandrade's offense conduct involved more than 8.4 kilograms of crack, meaning that his applicable guidelines range is unaffected.  (*See* 2012 Supp. PSR at 2.)

### IV. Form of Order and Delay of Release

*Statutory Authority*.  The Government notes that in entering an order in this matter, the Court should not use the AO Form 247 that was developed in 2011 for Guidelines-based

sentencing reduction motions under 18 U.S.C. § 3582(c)(2). Instead, the Government requests that any order on this motion reference statutory authority via introductory language to the following effect:

> Upon motion of the defendant under 18 U.S.C. § 3582(c)(1)(B) for a reduction in the term of imprisonment imposed based on Section 404(b) of the First Step Act of 2018, P.L. 115-391, § 404(b), 132 Stat. 5194, 5220 (2018), and having considered such motion, and taking into account the sentencing factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, it is hereby ORDERED that . . .

*Delay of Release*.  Should the Court order a new sentence, which would result in an immediate release of Deandrade, the Government further requests that the Court's order contain the following provision:

> The Bureau of Prisons is authorized to delay execution of this Order for up to ten days after its issuance so that the Bureau of Prisons may make necessary arrangements for the defendant to be received upon release, and to ensure that any other necessary notifications and formalities are accomplished. The Bureau of Prisons is authorized to release the defendant before the ten-day delay has ended if the necessary arrangements, notifications, and formalities for release are completed earlier.

The principal reason for this delay is that the Bureau of Prisons has advised that it may take time for appropriate living arrangements to be made for an inmate upon release, particularly if the inmate does not have relatives who can take him or her in.  In addition, in some instances (fairly infrequent for those convicted only of narcotics charges), the Bureau of Prisons may also need (1) to review the defendant for possible civil commitment as a sexually dangerous person, as required by 18 U.S.C. § 4248; (2) to notify victims and witnesses of the release of an offender as required by 18 U.S.C. § 3771; and (3) to notify law enforcement officials and sex offender registration officials of the release of a violent offender or sex offender pursuant to 18 U.S.C. § 4042(b) & (c).  The Bureau of Prisons is also required to collect DNA samples pursuant to 42 U.S.C. § 14135a, although these are usually obtained at the time of entry into Bureau of Prisons custody.

## V.    Conclusion

For the reasons set forth above, the Court should not grant Deandrade relief under the First Step Act.  In addition, he is ineligible for a sentence reduction under Amendments 750 and 782 to the Sentencing Guidelines.  Accordingly, the Court should deny Deandrade's motion in its entirety.

If the Court does choose to reduce Dendrade's sentence, the Government respectfully requests that the Court follow the procedure outlined in Part IV, *supra*.

Respectfully Submitted,

GEOFFREY S. BERMAN
United States Attorney


by: _____
Michael R. Herman
Assistant United States Attorney
(212) 637-2221