UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x
UNITED STATES OF AMERICA,            :
                                     :          07 Cr. 12 (LAP)
        -v.-                         :
                                     :          MEMORANDUM
                                     :          & ORDER
DANIEL DEANDRADE,                    :
                                     :
               Defendant.            :
------------------------------------x

LORETTA A. PRESKA, Senior United States District Judge:

     Before the Court is Defendant Daniel Deandrade's second

motion[1] for a compassionate release sentence reduction pursuant to

18 U.S.C. § 3582(c)(1)(A)(i).   (Dkt. no. 115).   The Government

opposed, (dkt. no. 117), and the Defendant replied, (dkt. no. 118).

For the reasons set out below, the motion is DENIED.[2]

---

[1] Defendant's first motion for compassionate release was denied
in 2021. United States v. Deandrade, No. 07 Cr. 12 (LAP), 2021
WL 3682474 (S.D.N.Y. Aug. 19, 2021) (denying first motion for
compassionate release); United States v. Deandrade, No. 07 Cr.
12 (LAP), 2020 WL 2317093 (S.D.N.Y. May 11, 2020), aff'd, 848 F.
App'x 471 (2d Cir. 2021) (denying motion for a sentencing
reduction under the First Step Act).
[2] Attorney Carlos Santiago was appointed to represent Defendant
on April 30, 2024.  (Dkt. no. 120.)  On November 11, 2024, Mr.
Santiago was ordered to inform the Court if Defendant's motion –
as to which Defendant filed a pro se reply – should be
considered sub judice.  (Dkt. no. 121.)  He did not do so.  On
December 16, 2024, at Defendant's request, the Clerk of Court
mailed a copy of the docket sheet to Defendant and ordered Mr.
Santiago to contact Defendant.  (Dkt. no. 123.)  The docket
sheet reflects no other action.  Under the circumstances, the
Court considers Defendant's motion to be ripe for decision.

I.    **Background**

Defendant was involved in two multi-kilogram crack distribution rings, one in Utica, New York, and the other along Stratford Avenue in the Bronx, throughout the early 2000s.  He both manufactured—or "cooked"—crack and facilitated its distribution.  From 2001 to 2003, Defendant acquired cocaine, manufactured crack, and supplied it to street level drug dealers, who sold it on the streets of Utica.  (Presentence Investigation Report ("PSR") ¶¶ 7-11, dated June 18, 2008.)  In total, Defendant supplied approximately 10 to 20 kilograms of crack to the Utica drug dealers, who sold approximately 500 to 1,000 grams of crack per week.  (Id. ¶¶ 10-11.)  In addition, simultaneously with his Utica narcotics trafficking, from 1999 through 2005, Defendant effectively "ran the crack business" on Stratford Avenue in the Bronx, facilitating the distribution of crack at a rate of approximately 250 grams to one kilogram of crack per week.  (Id. ¶ 12.)  In total, Defendant sold between 78 and 312 kilograms of crack on Stratford Avenue.  (Id. ¶ 12.)

on January 8, 2007, the Indictment was filed charging Defendant in two counts.  (Dkt. no. 7.)  Count One charged Defendant with conspiracy to distribute and possess with intent to distribute 50 grams and more of cocaine base, in a form commonly known as "crack," in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A), and 846.  Count Two charged Defendant with

distribution and possession with intent to distribute 50 grams and more of crack, in violation of 21 U.S.C. §§ 812, 841(a)(1) and 841(b)(1)(A).

On March 26, 2008, the Government filed a Prior Felony Information, charging that on or about December 21, 1990, in Bronx County Family Court, Defendant was convicted of criminal sale of a controlled substance in the fifth degree, a felony, for which he received a twelve-month reformatory term of incarceration, thus triggering the enhancement penalties contained in 21 U.S.C. § 841(b)(1)(A). (See dkt. no. 41.)

Defendant's trial began on April 14, 2008, and ended on April 17, 2008, when the jury found Defendant guilty of both counts of the Indictment.

On September 25, 2008, Judge Sand sentenced Defendant to a below-Guidelines sentence of 300 months incarceration. (Dkt. no. 57.) Defendant's conviction and sentence were thereafter affirmed by the Court of Appeals. United States v. Deandrade, 600 F.3d 115 (2d Cir. 2010).

Defendant's case was transferred to this Court on June 24, 2013. (Dkt. no. 77.) As noted above, this Court denied Defendant's previous motions for sentence reductions pursuant to the First Step Act and pursuant to 18 U.S.C. § 3582(c)(1)(A) for compassionate release. (Dkt. no. 80.) This Court also denied

Defendant's 2015 motion for a sentence reduction pursuant to 18

U.S.C. § 3582(c)(2).  (Dkt. nos. 89, 95).

Defendant has a projected release date of July 30, 2029.

## II.    <u>Applicable Law</u>

Under 18 U.S.C. § 3582, as amended by the First Step Act, the

court "may not modify a term of imprisonment once it has been

imposed except that . . .

> [T]he court, upon motion of the Director of the Bureau
> of Prisons [(the "BOP")], or upon motion of the defendant
> after the defendant has fully exhausted all
> administrative rights to appeal a failure of the Bureau
> of Prisons to bring a motion on the defendant's behalf
> or the lapse of 30 days from the receipt of such a
> request by the warden of the defendant's facility,
> whichever is earlier, may reduce the term of
> imprisonment (and may impose a term of probation or
> supervised release with or without conditions that does
> not exceed the unserved portion of the original term of
> imprisonment), after considering the factors set forth
> in section 3553(a) to the extent that they are
> applicable, if it finds that . . . extraordinary and
> compelling reasons warrant such a reduction . . . and
> that such a reduction is consistent with applicable
> policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i).

"Originally, § 3582(c)(1)(A) did not permit defendants to

initiate compassionate release proceedings; it required the BOP to

seek such release on their behalf." <u>United States v. Corbett</u>, No.

10 Cr. 184 (PAE), 2023 WL 8073638, at *3 (S.D.N.Y. Nov. 21, 2023)

(citing <u>United States v. Phillibert</u>, 557 F. Supp. 3d 456, 459

(S.D.N.Y. 2020).  But in 2018, Congress enacted the First Step Act

and "authorized courts to reduce a term of imprisonment upon motion

by a defendant." United States v. Amato, 48 F.4th 61, 63 (2d Cir. 2022) (per curiam).

The Sentencing Commission is responsible for "describ[ing] what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). Accordingly, even before the First Step Act was enacted, the Sentencing Commission promulgated a policy statement—Section 1B1.13 of the Guidelines—concerning sentence reductions under Section 3582, which explained, among other things, what constitutes an extraordinary and compelling reason for a sentence reduction. U.S. Sent'g Guidelines Manual § 1B1.13 (U.S. Sent'g Comm'n 2024).

In September 2020, the Court of Appeals held that this policy statement "applied only to a 'motion of the Director of the Bureau of Prisons,' see U.S.S.G. § 1B1.13 (historical note), and not 'to compassionate release motions brought by defendants[.]'" Corbett, 2023 WL 8073638, at *3 (quoting United States v. Brooker, 976 F.3d 228, 236 (2d Cir. 2020)). As a result, the Court of Appeals explained that the policy statement did not "constrain district courts' discretion to consider whether any reasons are extraordinary and compelling." Brooker, 976 F.3d at 236. Even though Section 1B1.13 did not govern compassionate release motions filed by a defendant, district courts were nevertheless able to "look[] to § 1B1.13 for guidance in the exercise of [their]

discretion" when considering such a motion. United States v. Rodriguez, No. 16 Cr. 07 (AJN), 2020 WL 7640539, at *3 (S.D.N.Y. Dec. 23, 2020).

However, "[e]ffective November 1, 2023, . . . the Sentencing Commission amended the Guidelines to also cover defendant-initiated petitions." Corbett, 2023 WL 8073638, at *3 (citing Amends. to the Sent'g Guidelines, 88 Fed. Reg. 28254 (U.S. Sent'g Comm'n May 3, 2023)). "The amended guidance from the Commission as to what constitutes extraordinary and compelling reasons now controls the analysis of a compassionate release petition, however initiated." Id. Section 1B1.13 of the Guidelines, as amended, explains what circumstances, "singly or in combination," constitute extraordinary and compelling reasons for release. Id. These include, at a high level, certain medical circumstances of the defendant, the age of the defendant, certain family circumstances, whether the defendant was the victim of abuse while in custody, other circumstances of similar gravity, and changes in law that make the defendant's sentence unusually long. See U.S.S.G. § 1B1.13(b); United States v. Mendez-Rojas, No. 11 Cr. 929 (PAE), 2024 WL 4345561, at *3 (S.D.N.Y. Sept. 30, 2024).

In short, when a court considers a motion for compassionate release filed by a defendant, the court may only grant that motion where the defendant has demonstrated that (i) he has exhausted his administrative remedies, (ii) there are extraordinary and

compelling reasons for a reduction of the sentence, (iii) the Section 3553(a) factors favor such a reduction, and (iv) such a reduction is consistent with the Sentencing Commission's policy statements.  See 18 U.S.C. § 3582(c)(1)(A).  The defendant, as the proponent of the motion, bears the burden of proving that he is entitled to the requested relief under Section 3582.  See United States v. Butler, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue."); United States v. Ebbers, 432 F. Supp. 3d 421, 426 (S.D.N.Y. 2020) ("The defendant has the burden to show he is entitled to a sentence reduction.") (citing Butler, 970 F.2d at 1026); United States v. Givens, No. 14 Cr. 546-09 (CM), 2020 WL 4699042, at *2 (S.D.N.Y. Aug. 13, 2020) (similar).

Additionally, if the Court "concludes that the applicable [§] 3553(a) factors do not support a sentence reduction, it need not determine whether the defendant has shown extraordinary and compelling reasons." United States v. Giattino, No. 23-6918-cr, 2024 WL 4579342, at *2 (2d Cir. Oct. 25, 2024) (summary order) (citing United States v. Keitt, 21 F.4th 67, 73 (2d Cir. 2021) (per curiam)); see also United States v. Ramirez, 571 F. Supp. 3d 40, 45 (S.D.N.Y. 2021) ("A court may still deny compassionate release where the § 3553(a) factors override, in any particular

case, what would otherwise be extraordinary and compelling circumstances.").

III.    <u>Discussion</u>

       **A. Defendant Has Not Exhausted His Administrative Remedies**

Under 18 U.S.C. § 3582(c), a district court "may not" modify a term of imprisonment once imposed, except under limited circumstances. One such circumstance is the so-called compassionate release provision, which provides that a district court "may reduce the term of imprisonment" where it finds "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A)(i). A motion under this provision may be made by BOP or a defendant, but in the latter case only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

Defendant asserts that he submitted his request for compassionate release "to the Warden of his facility on November 1, 2022" and "[d]espite repeated requests, [he] has not received a response from the Warden to date (12/05/22)." (Dkt. no. 115 at 3 and Ex. A.) However, the Government reports that the BOP has informed it that it has no record of Defendant ever requesting compassionate release or other reduction in sentence request.

(Dkt. no. 117 at 3-4.)  The Government notes that Defendant also claimed that he submitted a request for compassionate release in connection with this 2021 motion, but then, just as now, the BOP had no record of him ever submitting such a request.  (Id. at 4 (citing dkt. no. 110 at 5, n.1, & Ex. A).)

Accordingly, where, as here, a motion is brought by a defendant who has not "fully exhausted all administrative rights," the district court "may not" modify his term of imprisonment.  18 U.S.C. § 3582(c); see also United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) (denying an early release motion based on COVID-19 and finding that the defendant's failure to exhaust his administrative remedies "present[ed] a glaring roadblock foreclosing compassionate release at this point"); United States v. Monzon, No. 99 Cr. 157 (DLC), 2020 WL 550220, at *1 (S.D.N.Y. Feb. 4, 2020) (collecting cases).

Because administrative exhaustion is mandatory, the Court thus lacks authority to grant Defendant's request for compassionate release.  See Ross v. Blake, 578 U.S. 632, 639 (2016) (observing with respect to statutory exhaustion provisions that "Congress sets the rules—and courts have a role in creating exceptions only if Congress wants them to").  Accordingly, Defendant's motion is denied in light of his failure to exhaust his administrative remedies.

### B. Defendant Has Not Identified Any Medical Issues Constituting Extraordinary and Compelling Reasons for Release

Even if Defendant had exhausted his administrative remedies, he fails to identify any extraordinary and compelling reasons justifying relief.  In this regard, Defendant's motion focuses largely on general concerns related to the COVID-19 pandemic.  But while COVID-19 poses serious health challenges both in prisons and for the public at large, general concerns related to the pandemic are insufficient to establish extraordinary and compelling reasons justifying early termination of a validly imposed sentence.  See, e.g., United States v. Hidalgo, 462 F. Supp. 3d 470, 473-74 (S.D.N.Y. 2020) (acknowledging that "[t]he COVID-19 pandemic is serious, especially for individuals with underlying conditions that put them at heightened risk of developing severe illness as a result of COVID-19," but denying release where "the defendant ha[d] not demonstrated that the underlying conditions he points to in fact put the defendant at a heightened risk"); see also Raia, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.").

Beyond general concerns related to COVID-19 and his incarceration, Defendant does not identify any circumstances

10

placing him at particular risk of exposure to the virus.  He claims

he has "particularized susceptibility" to COVID-19 because of his

"history of Pre-Diabetes, Asthma, and former smoker status."  (Dkt.

no. 115 at 3.)  His recent medical records, however, do not appear

to reflect any current comorbidity with COVID-19.  (Dkt. no. 117,

Ex. B.)  While Defendant's medical records indicate "prediabetes,"

he does not require insulin or any other intervention for it.  (Id.

at 13.)  And the medical records do not show any indication of

asthma.

     Moreover, while Defendant claims he received "both doses of

the Moderna vaccine and the booster shot," (dkt. no. 115 at 4),

his medical records reflect that he refused to be vaccinated

against the COVID-19 virus, despite the strong urging of prison

medical staff.  Indeed, Defendant's medical records contain a

record on August 19, 2022: "COVID precautions reviewed with

patient, he refused vaccine/FLU shots and I begged him to please

reconsider."  (Dkt. no. 117, Ex. B. at 11 (emphasis added).); see

also id. at 16 (noting Defendant also refused COVID vaccine on

March 24, 2021).)  Courts have consistently noted the "disconnect

between [a defendant's] professed concern about contracting severe

illness from COVID-19 and his refusal of the COVID-19 vaccine when

it was offered to him," and indeed, "'[i]n such instances, courts

in this district and elsewhere have nearly uniformly denied

compassionate release sought for medical reasons.'"  United States

v. Vasquez, No. 13 Cr. 869 (KPF), 2022 WL 269149, at *5 (S.D.N.Y. Jan. 26, 2022) (collecting cases, and quoting United States v. Robinson, No. 17 Cr. 611 (AT), 2021 WL 1565663, at *3 (S.D.N.Y. Apr. 21, 2021)); see also United States v. Mascuzzio, No. 16 Cr. 576 (JFK), 2021 WL 794504, at *3 (S.D.N.Y. Mar. 2, 2021) (noting "the Court would be hard-pressed to conclude" that the defendant's medical condition warranted release "in light of [his] voluntary refusal of an approved vaccine that is highly effective at preventing COVID-19 and may also help keep [him] from getting seriously ill even if [he did] get COVID-19." (internal quotations omitted)); United States v. Bryant, No. 06 Cr. 17 (LTS), 2021 WL 738838, at *2 (S.D.N.Y. Feb. 24, 2021) ("Mr. Bryant's refusal to accept a risk-mitigating measure, even one with a period of delay in its efficacy, is relevant to whether the risk of infection he faces in the MDC is extraordinary and militates against finding that the degree of risk compels release."); United States v. King, No. 16 Cr. 478-11 (CS), 2021 WL 736422, at *2 (S.D.N.Y. Feb. 24, 2021) ("In declining vaccination . . . [Defendant] declined the opportunity to reduce his risk exposure to COVID-19 dramatically; he cannot reasonably expect that prolonging his risk by declining vaccination will be rewarded with a sentence reduction." (internal quotations omitted)).[3]

---

[3] In any event, even if Defendant were vaccinated, that would also counsel against release, as he would be protected (cont'd)

Finally, while Defendant claims there have been COVID outbreaks at FCI Allenwood, where he is currently housed, even he admits that those outbreaks occurred in 2020 and 2021.  (Dkt. no. 115 at 2.)  In any event, FCI Allenwood has few reported COVID-19 cases and is indicating the fewest restrictions on inmates due to low levels of community and facility-level transmission.

In short, Defendant has not established "extraordinary and compelling" reasons for his release.

## C. The Section 3553(a) Factors Weigh Against Reducing Defendant's Sentence

Even if Defendant had established extraordinary and compelling circumstances warranting release, the Section 3553(a) factors weigh against granting the Defendant's motion.  Defendant was a major crack supplier and distributor in two different locations over a substantial period of time.  And, his criminal

---

(cont'd) against severe illness from COVID-19.  See, e.g., United States v. Jaber, No. 13 Cr. 485 (CM), 2022 WL 35434, at *2 (S.D.N.Y. Jan. 4, 2022) (noting "the fact that a defendant is fully vaccinated weighs heavily against granting release"); United States v. Orlandez-Gamboa, 99 Cr. 654 (CM), 2021 WL 2582077, at *3 (S.D.N.Y. June 23, 2021) (finding defendant had failed to demonstrate extraordinary and compelling circumstances, even though he was in high-risk age group, because he was (cont'd) (cont'd) "fully vaccinated against COVID-19"); United States v. Mena, 16 Cr. 850 (ER), 2021 WL 2562442, at *3 (S.D.N.Y. June 23, 2021) ("Access to an approved COVID-19 vaccine generally counsels against compassionate release based on COVID risk, due to the strong evidence of the effectiveness of each of the vaccines.").

history was one of a habitual offender who only stopped criminal

conduct during periods in which he was incarcerated.

As this Court observed in denying Defendant's motion for a

sentencing reduction pursuant to the First Step Act:

> The seriousness of this Defendant's crime and the length
> and seriousness of his criminal history counsel against
> any reduction in sentence.  Defendant engaged in drug
> dealing on a massive scale in two cities over an extended
> period of time, wreaking untold damage on those
> communities.  That activity was apparently his only
> activity from age fifteen, and he earned his way into
> Criminal History Category V fairly and squarely by
> committing crimes over the course of nearly two decades.
> Accordingly, the Court finds that Defendant's release
> would pose a danger to the community.

Deandrade, 2020 WL 2317093, at *2; see also Deandrade, 2021 WL

3682474, at *3 (same).  The same considerations continue to apply

here.

IV.    **Conclusion**

For the reasons set out above, Defendant's motion pursuant to

18 U.S.C. § 3582(c)(1)(A)(i), (dkt. no. 115), is denied.

As the motion makes no substantial showing of a denial of a

constitutional right, a certificate of appealability will not

issue.  See 28 U.S.C. § 2253.  The Court certifies under 28 U.S.C.

§ 1915(a)(3) that any appeal from this Order would not be taken in

good faith, and therefore in forma pauperis status is denied for

the purpose of an appeal.  Cf. Coppedge v. United States, 369 U.S.

438, 444-45 (1962) (holding that an appellant demonstrates good

faith when he seeks review of a nonfrivolous issue).

14

The Clerk of the Court shall close dkt. no. 115 and mail a copy of this order to Defendant.

**SO ORDERED.**

Dated:     New York, New York
           April 8, 2025

_____
LORETTA A. PRESKA
Senior United States District Judge